IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ROBERT REZA,
          **Movant**,

-vs-                                          Case No. A-13-CA-856-SS
                                                [No. A-12-CR-216(1)-SS]

UNITED STATES OF AMERICA,
          **Respondent**.

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Movant Robert Reza's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [#245], Reza's Amended Motion [#252], the Government's Responses [##251, 255], and Reza's Reply [#257]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

On June 5, 2012, Reza was charged in counts one through four and count six of a seven-count indictment with: conspiracy to distribute more than five kilograms of cocaine (Count One); distribution of cocaine (Counts Two and Three); distribution of more than five hundred grams of cocaine (Count Four); and aiding and abetting the distribution of more than five hundred grams of cocaine (Count Six). On August 28, 2012, Reza was charged in a one-count criminal information with conspiracy to possess with intent to distribute more than five hundred grams of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B). Reza pleaded guilty the same day, pursuant to a plea agreement. On November 9, 2012, this Court sentenced Reza to a 108-month term of

imprisonment, followed by a four-year term of supervised release, and imposed a mandatory $100 assessment fee. Reza did not appeal.

Reza filed his § 2255 motion on September 24, 2013. After the Government responded, Reza filed a "Memorandum of Law in Support" of his § 2255 motion, which raised several new grounds for relief. This Court construed the filing as Reza's attempt to amend his § 2255 motion, and ordered the Government to respond again. Taken together, Reza's filings raise the following grounds for relief: Reza contends he received ineffective assistance of counsel because (a) counsel failed to file a requested notice of appeal; (b) counsel promised Reza his maximum sentence would not exceed five years; (c) counsel failed to object to the Court's drug quantity calculation; (d) counsel failed to inform Reza of the immigration consequences of his plea agreement; (e) counsel failed to argue for a safety valve reduction; and (f) counsel failed to request a reduced sentence due to Reza's lack of criminal history, health, age, and rehabilitation efforts. The Court found Reza's *Flores-Ortega*[1] claim could not be resolved on the paper record before the Court, and thus an evidentiary hearing was scheduled and new counsel was appointed to represent Reza at the hearing. *See* Order of Jan. 30, 2014 [#256].

## Analysis

**I.     Section 2255—Legal Standard**

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the District Court that

---

[1] *See Roe v. Flores-Ortega*, 528 U.S. 470, 483–86 (2000) (holding counsel's failure to file a requested notice of appeal may amount to ineffective assistance if defendant can show there is a reasonable probability he would have appealed but for counsel's actions).

imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In addition, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default, and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558.

## II.    Application

Reza's grounds for relief all take issue with the adequacy of the attorney appointed to represent him. The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In evaluating counsel's performance, care must be taken to "eliminate the distorting effects of hindsight." *Id.* at 690. Accordingly, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* If counsel's

performance is found to be deficient, it must also have prejudiced the result to afford any relief to the defendant. *Id.* at 691. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A. *Flores-Ortega* Claim

"Under *Flores-Ortega*, the first *Strickland* prong begins with the question whether counsel 'consulted' with the defendant regarding an appeal." *United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013). If counsel did so, "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Turning to the second *Strickland* prong, if a petitioner "is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to file an out-of-time appeal." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

Testifying at the evidentiary hearing, Reza stated he called his counsel, Jeff Senter, approximately four days after sentencing. Reza left a message with Mr. Senter's legal assistant, Melidia Perez. Ms. Perez testified Reza asked about an appeal to lower the length of his sentence, and Ms. Perez's note reflecting the phone call was submitted into evidence. The handwritten note read "appeal to lower time," among other things. Reza further testified he subsequently spoke with Mr. Senter on two occasions via videoconference. Reza testified on both occasions he instructed Mr. Senter to file a notice of appeal in his case. When asked by the Court about his recollection of his sentencing hearing, wherein the Court specifically advised Reza of the benefits provided by his plea agreement and the consequences of breaching the plea agreement's appeal waiver provision, Reza

testified he could not remember anything about sentencing other than being told he had a right to appeal.

Mr. Senter also testified at the evidentiary hearing. Mr. Senter testified he specifically scheduled both videoconference calls with Reza to clarify what Reza wanted him to do. Mr. Senter testified Reza was not interested in filing an actual appeal, and never instructed him to file a notice of appeal. Instead, Reza was interested in finding some way to lower his sentence. Mr. Senter discussed with Reza the possibility of obtaining a reduction via a Rule 35(b) motion from the Government.[2] Mr. Senter further testified he would have immediately filed a notice of appeal had Reza requested he do so, and has filed notices of appeal in the past, but Reza clearly communicated he wanted neither a trial nor an appeal.

Based on this testimony, the Court finds Mr. Senter clearly consulted with Reza regarding the possibility of an appeal. The Court further finds Reza has failed to show, by a preponderance of the evidence, he requested Mr. Senter file a notice of appeal, or show Mr. Senter disregarded any explicit instruction to do so. Mr. Senter's testimony established multiple discussions took place post-sentencing to confirm precisely what Reza wanted to do. Mr. Senter's explanation of Reza's inquiries is credible and makes sense, because Reza's plea agreement eliminated the ten-year mandatory minimum sentence he faced under the indictment and also waived his right to appeal, meaning any appeal would most likely have had disastrous consequences for Reza. Mr. Senter had no reason not to file a notice of appeal had Reza requested one. Additionally, as discussed in more detail below, Reza's misrepresentation of Mr. Senter's advice regarding the risks of deportation

---

[2] As noted below, Reza's refusal to cooperate with the Government post-plea doomed any hope of such a motion being filed on his behalf.

associated with Reza's plea reduces his credibility as a witness. Because Reza has failed to carry his burden to show he requested Mr. Senter file a notice of appeal and Mr. Senter disregarded that specific instruction, Reza is not entitled to relief on his *Flores-Ortega* claim.

**B.     Maximum Sentence Promise**

Reza maintains his plea agreement promised a maximum sentence of five years, and contends his attorney advised him of the same. There is no basis for this argument. The plea agreement itself plainly stated, on the first page, Reza's sentencing exposure was a minimum of five years and a maximum of forty years. By signing the plea agree, Reza further acknowledged there were no other agreements regarding his sentencing, the Court would make the ultimate determination, and any indication of a probable sentence from his attorney or anyone else was not binding. Further, during Reza's plea colloquy, Magistrate Judge Lane advised Reza as follows:

> THE COURT: [Y]our cases involve what is commonly referred to as a mandatory minimum, meaning if you plead guilty to the charges that you're facing, you will not know what your eventual sentence will be other than that it will fall within a period of five years to 40 years. But you do know this: You're going to serve at least five years in the Bureau of Prisons. Do each of you gentlemen understand that?
>
> DEFENDANT REZA:      Yes.

Plea Tr. [#249] at 26. Shortly after this exchange, Magistrate Judge Lane again explained the defendants' sentencing exposure:

> THE COURT: So what I'm telling you gentlemen is this: That while the sentencing guideline range is important, it is advisory to the district judge. So before you enter your guilty plea, you do not know what your sentence will be in each of your individual cases. All you do know is that it will be less than the statutory maximum that I described earlier. Or in the case of the first three of you gentlemen [including Reza], it will not be less than five years in prison. Do each of you gentlemen

> understand what I have told you with regard to the sentencing factors that apply to your case?
>
> DEFENDANT REZA:     Yes.

*Id.* at 32–33. Reza then proceeded to enter his guilty plea.

As the Fifth Circuit has repeatedly held, "a defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). "'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)). To obtain relief on his claim despite his multiple contradictory statements given in open court and under oath, Reza must prove "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *Id.* Reza presents nothing more than a conclusory assertion his counsel promised his sentence would not exceed five years. This lone statement is insufficient to overcome the plea agreement Reza signed and Reza's statements under oath, all of which indicate Reza knew his plea agreement did not guarantee him a maximum sentence of five years in prison. Reza has failed to show counsel's performance was deficient, or show he was prejudiced in any way.

### C.     Drug Quantity Calculations

Although Reza's argument regarding the amount of cocaine he was held responsible for is difficult to follow, he appears to contend his counsel was ineffective for failing to object to this Court's determination, based on the presentence investigation report, Reza was responsible for an amount of drugs in excess of that stipulated to in the plea agreement. Reza contends drug quantity

decisions must be submitted to the jury, presumably referencing (but not actually citing) *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

First, to the extent Reza seeks to rely on *Alleyne*, his argument has no merit. Reza was sentenced in 2012. *Alleyne* was decided in 2013. Reza's counsel was not ineffective for failing to advance an argument based on case law which did not exist at the time of sentencing. Further, the only way Reza could now be entitled to relief based on *Alleyne* is if the Supreme Court had declared *Alleyne* to be retroactively applicable to cases on collateral review, which it did not do. *In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013) (denying successive § 2255 motion attempting to invoke *Alleyne* retroactively).

Second, to the extent Reza complains the Court, and not a jury, found he was responsible for a certain quantity of drugs over those admitted in the plea agreement, his argument is squarely answered by *United States v. Booker*, 543 U.S. 220 (2005). As the Fifth Circuit has explained, under *Booker*, "[t]he sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence." *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). Moreover, in finding such facts, the sentencing court is entitled to adopt facts from the presentence investigation report "without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007) (internal quotation marks omitted). "A presentencing report generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations required by the sentencing guidelines." *United States v. Fitzgerald*, 89 F.3d

218, 223 (5th Cir. 1996). Reza did not challenge the drug quantities attributed to him by the presentence investigation report. In his motion, he continues to offer neither evidence nor argument as to why those amounts were not reliable or accurate. Instead, Reza's sole objection appears to be to the identity of the fact-finder—judge, rather than jury. Reza has no basis for such an objection post-*Booker*, however, and therefore counsel was not ineffective for failing to object to the Court finding the amount of drugs attributable to Reza's conduct.

### D.  Immigration Consequences

The United States Supreme Court has held "the Sixth Amendment imposes on attorneys representing noncitizen criminal defendants a constitutional duty to advise the defendants about the potential removal consequences arising from a guilty plea." *United States v. Amer*, 681 F.3d 211, 212 (5th Cir. 2012) (citing *Padilla v. Kentucky*, 559 U.S. 356 (2010)); *see also Chaidez v. United States*, 133 S. Ct. 1103, 1106 (2013) (under *Padilla*, "defense attorneys must inform non-citizen clients of the risks of deportation arising from guilty pleas").

In his motion, Reza contends he would not have entered into a guilty plea had he known of the immigration consequences associated with a conviction in his case.[3] However, testifying at the evidentiary hearing held by the Court, Reza testified his attorney did in fact tell him about his deportation. Reza further testified he understood when he signed the plea agreement he would be deported. Reza's own testimony thus establishes—contrary to the allegations made in his § 2255

---

[3] Despite Reza's assertion in his motion, the record is clear Reza was advised of and knew the immigration consequences of his plea. Reza's plea agreement disclosed Reza's possible deportation, and further certified Reza had discussed the same with his attorney and still wished to plead guilty. Additionally, Reza was specifically advised by the Magistrate Judge at rearraignment about the immigration consequences of his guilty plea, including revocation of Reza's permanent resident status and deportation. Reza's responses, given under oath in open court, established he was aware of and understood these immigration consequences and still desired to plead guilty. Any suggestion Reza was unaware of these consequences, or would have acted differently had he known about them, is squarely refuted by the record and Reza's own sworn testimony prior to entering his plea of guilty.

motion—his attorney informed him of "the risks of deportation arising from" his guilty plea. *See Chaidez*, 133 S. Ct. at 1106. Reza is therefore not entitled to any relief under *Padilla* and its progeny.

E.     **Safety Valve and Miscellaneous Reductions**

Reza contends counsel was ineffective for failing to seek a safety valve reduction under U.S.S.G. § 2D1.1(b)(16). A safety valve reduction may only be awarded if a defendant meets all criteria set forth in U.S.S.G. § 5C1.2(a)(1)–(5). Importantly, the guidelines require the defendant to have "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(5). After signing his plea agreement, Reza refused to cooperate with the Government and provide information or evidence concerning the drug conspiracy in which he was involved. This fact was noted in Reza's presentence investigation report. PSR ¶ 50. It was noted in Reza's own sentencing memorandum, which conceded Reza did not qualify for the reduction because of his lack of cooperation. Gov't's 2d Resp. [#255-1], Ex. C. And the Government noted Reza's lack of cooperation at sentencing. Sent. Tr. [#255], at 5–6. Based on this lack of cooperation, Reza was ineligible for a safety valve reduction, and counsel was not ineffective for failing to make a futile request for such a reduction. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").

Finally, Reza faults counsel for failing to seek a reduction in Reza's sentence based on various personal characteristics, including Reza's age, lack of criminal history, deteriorating health, and "rehabilitation efforts." Contrary to Reza's assertion, counsel presented, and the Court considered, all of these factors. Counsel filed a sentencing memorandum highlighting Reza's lack

of criminal history and attaching sixty-two letters in support of Reza. The memorandum, attachments, and presentence report all disclosed Reza's age, criminal history, health complications (diabetes and hypertension), and lack of substance abuse problems. In the memorandum and at sentencing, counsel requested a low-end or below-guidelines sentence in light of these factors. Counsel's performance was neither deficient nor prejudicial to Reza, whose personal circumstances were fully known to the Court at the time of sentencing.

## Conclusion

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejects a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Reza's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Thus, a certificate of appealability shall not be issued.

Accordingly,

IT IS ORDERED that Movant Robert Reza's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [#245] and Reza's Amended Motion [#252] are DENIED;

IT IS FINALLY ORDERED that a certificate of appealability is DENIED.

SIGNED this the 12th day of March 2014.

*/s/ Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE